UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE LUBESKI,

        Plaintiff,

v.

        CASE NO. 11-15404

        HON. MARIANNE O. BATTANI

METROPOLITAN LIFE INSURANCE
COMPANY and THE HOME DEPOT
LONG TERM DISABILITY PLAN,

        Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND GRANTING
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

This matter is before the Court on the parties' Cross-Motions for Summary Judgment. (Docs. 20, 21). Plaintiff, Julie Lubeski, argues Defendants, Metropolitan Life Insurance Company and The Home Depot Long Term Disability Plan, wrongfully terminated her long term disability benefits. Defendants assert Plaintiff is not disabled and seek affirmance of the Plan Administrator's decision. Both parties also seek attorney fees and costs. For the reasons that follow, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED**.

**I.    STATEMENT OF FACTS**

Lubeski worked for Home Depot as a computer room associate for several years until her employment ended on April 16, 2009. (Doc. 21 at 3). Home Depot provided an Employee Benefit Plan (hereinafter "the Plan"), which provided short-term and long-term disability benefits to employees who met certain criteria. (Doc. 21 Ex. A). On April

17, 2009, Metropolitan Life Insurance Company (hereinafter "MetLife"), the entity responsible for reviewing claims and determining benefits eligibility, approved short-term benefits for Lubeski through May 31, 2009. (A.R. 697-98). After receiving several medical reports, MetLife notified Lubeski of its intention to discontinue benefits. (A.R. 691-92). On November 13, 2009, Lubeski appealed MetLife's determination. (A.R. 665). In a report dated December 24, 2009, Dr. Phillips determined Lubeski "could not perform some of the material duties of her job," the standard for determination of short-term benefits. (A.R. 618-25). Therefore, MetLife paid the short-term disability benefits for the period from May 31, 2009 until October 15, 2009, the maximum duration permitted. (A.R. 626). Home Depot then submitted her file to determine whether she qualified for long-term disability benefits. (Id.)

In order to obtain long-term disability benefits under the Plan, an employee must establish that she requires the regular care of a doctor and is "unable to perform each of the material duties of [her] regular job or any gainful occupation for which [she is] reasonably qualified taking into account [her] education, training and experience." (A.R. 23). After her short-term benefits expired, Lubeski began receiving long-term disability benefits commencing October 15, 2009.

MetLife terminated the benefits on February 19, 2010. (A.R. 578-81). During the review of Lubeski's eligibility for long-term benefits, MetLife forwarded the medical report of Dr. Phillips, an independent physician who conducted the file reivew, to one of Lubeski's treating physicians, Dr. Beall, which indicated the following:

> beyond 05-31-09, the claimant would have been able to perform the following: sitting 6-8 hrs, with stretch and stand breaks every 30 minutes to an hour, standing 1-2 hrs, walking 3-4 hrs, bending 1-2 hrs, occasional climbing or reaching, kneeling/balancing 1 hr, lifting/carrying up to 20 lbs

>occasionally, frequent repetitive use, grasping, fine finger dexterity of left hand, occasional repetitive use, grasping, and fine finger dexterity of right hand.

(A. R. 623). MetLife requested Dr. Beall to provide his medical opinion of Lubeski's condition in a letter. He responded, indicating Lubeski could perform sedentary work. (A.R. 584). A vocational expert then concluded Lubeski could perform four sedentary jobs. (A.R. 582-83). Consequently, MetLife terminated her long-term benefits.

Through her attorney at the time, Lubeski appealed the denial of long-term benefits in July of 2010, submitting over 300 pages of medical history and reports. (A.R. 246-577). This included Dr. Beall's 2010 diagnosis of myelopathic quadriparesis, which results in weakness in the arms and legs. (A.R. 249). Dr. Beall suggested Lubeski shows some symptoms of multiple sclerosis, but does not meet all the criteria of the disease. (A.R. 248). He also diagnosed Lubeski with Clinically Isolated Syndrome, obesity, lower back pain, and "all over muscle pain." (Id.) On March, 18, 2010, Dr. Beall mentioned in his notes that Lubeski could not work at a sedentary level because of shoulder pain, weakness, and back pain. (A.R. 249). Dr. Prakash, another of Lubeski's treating physicians, diagnosed her with fibromyalgia and spondyloarthropathy in 2009. (A.R. 638-39). Lubeski takes several prescription drugs with several side effects that may affect her ability to work.

MetLife referred Lubeski's file to Dr. Varpetian, an Independent Physician Consultant, Board Certified in Neurology and Internal Medicine, who worked for Reliable Review Services, a firm hired by MetLife to independently review claims. (A.R. 231-36). Dr. Varpetian determined Lubeski should be limited to lifting and carrying up to twenty pounds, standing and walking up to an hour continuously, and no bending

twisting or crawling. (A.R. 235). Dr. Varpetian reported Lubeski did not have multiple sclerosis and that Dr. Beall's diagnosis of clinically isolate syndrome was "questionable." (A.R. at 234). MetLife then forwarded Dr. Varpetian's report to Dr. Beall, Dr. Prakash, and Dr. Connaghan, all of which are Lubeski's treating physicians. (A.R. 227-29). Dr. Connaghan agreed with Dr. Varpetian's analysis, and Dr. Beall did not respond. (A.R. 217). Dr. Prakash issued a report modifying the restrictions to not "lift more than ten pounds for a sustained period of time; no bending, kneeling or crawling; sitting and standing at will, but no standing or walking for more than 20 minutes at a time." (A.R. 180). It also stated that Lubeski had constant pain in her lumbar spine and tenderness in multiple joints and muscles. (Id.) Although this report was submitted after MetLife terminated benefits, MetLife reviewed it, but did not alter its decision. (A.R. 175-76).

After reviewing the accompanying reports, MetLife affirmed its decision in a letter dated October 4, 2010. (A.R. 185-192). The letter stated that because Lubeski could perform sedentary work, she did not meet the criteria for long-term disability benefits. Thus, Lubeski filed this action challenging the denial of benefits in state court, and the case was removed on December 12, 2011. (Doc. 1). In support of her disability, Lubeski alleges to suffer from "clinically isolated syndrome, significant back pain and arthritis, obesity, fibromyalgia, weakness, sleep apnea, myelopathic quadriparesis, possible multiple sclerosis, lumbar radiculopathy, chronic fatigue, tendinitis in her shoulder, depression, spondyloarthropathy, and numerous other medical conditions." (Doc. 20 at 2-3).

4

Lubeski argues MetLife's denial of benefits is subject to *de novo* review by this Court because the Plan did not vest discretionary authority in MetLife. She questions the credibility of Dr. Varpertian's claim file review, and contends the medical opinions of her treating physicians support her claim for long-term disability benefits under the Plan.

## II.     ANALYSIS

### A.     Standard of Review

Under 29 U.S.C. § 1132(a)(1)(B), an employee who is denied benefits by their employer may challenge the eligibility determination. Such a denial "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Thus, the highly deferential arbitrary and capricious standard of review is appropriate when the plan expressly grants such discretionary authority. Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996) (citing Perry v. Simplicity Eng'g, 900 F.2d 963, 965 (6th Cir. 1990)). "An ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are 'rational in light of the plan's provisions.'" Miller v. Metro. Life Ins. Co., 925 F.2d 979, 984 (6th Cir. 1991) (quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988). Under this standard, a court's review of a decision to deny ERISA benefits is limited to a review of the administrative record. See Yeager, 88 F.3d at 381.

The Plan provided:

In carrying out their respective responsibilities under the Plan, the Plan
Administrator and other Plan fiduciaries shall have discretionary authority
to interpret the terms of the Plan and to determine eligibility for and
entitlement to Plan benefits in accordance with the terms of the Plan. Any

5

> interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation was arbitrary and capricious.

(A.R. 41). The Plan named "Home Depot U.S.A., Inc." as the "Plan Administrator" and specified the "Type of Administration" as performed by "Metropolitan Life Insurance Company." (A.R. 39). It also provided numerous details regarding the claims process along with the process MetLife employs to make initial benefits determinations and benefits appeals. (Id.)

Lubeski argues the *de novo* standard of review applies because MetLife is not specifically named as a Plan Fiduciary. In support, she relies on <u>Shelby County Health Care Corp. v. Majestic Star Casino</u>, 581 F.3d 355 (6th Cir. 2009). However, her reliance is misplaced. In that case, the Plan Summary defined Majestic, the employer, as "the sole fiduciary of the Plan." Id. at 362. The third-party Contract Administrator was hired to handle claims and the Plan explicitly stated the third-party was "not a fiduciary of the Plan and does not exercise any of the discretionary authority and responsibility granted to the Plan Administrator." Id. Majestic had sole discretionary authority to determine eligibility of benefits. Id. This is in stark contrast from the terms of the Plan in the instant case.

Although the Plan named Home Depot as the Plan Administrator, it is clear MetLife is a Plan fiduciary. The Plan specified MetLife under "Type of Administration," and all questions and concerns about benefits claims and appeals were directed to MetLife. As the party handling all benefits claims, it had the inherent responsibility to handle such claims according to the terms of the Plan and in the best interests of Home Depot and its employees. The mere fact that it was not expressly designated "Plan

fiduciary" is of no consequence.[1]  Because it is clear that MetLife was a Plan fiduciary expressly granted discretion to determine eligibility for benefits, its decision will not be overturned unless the Court determines it is arbitrary and capricious.

### B.     Conflict of Interest and Denial of Benefits

Lubeski argues a conflict of interest taints the benefit eligibility decisions of MetLife because the determination was based off the medical opinions of physicians it employs.  Her theory is that these physicians have an incentive to not find a disability.  In support, Lubeski offers evidence of the large sums of money MetLife pays Reliable Review Services for its physicians to conduct reports of claimants.  (Doc. 20 Ex. A).  Furthermore, Lubeski argues the decision to deny benefits was arbitrary and capricious because Dr. Varpetian ignored the opinions of her treating physicians recommending she was unfit for sedentary work.

In a case such as this, an apparent conflict of interest is created where the administrator of the plan "both [ ] decide[s] whether an employee is eligible for benefits and [whether] to pay those benefits."  Glenn v. Metro. Life Ins. Co., 461 F.3d 660, 666 (6th Cir. 2006).  The apparent conflict of interest is a factor the court must take into consideration under the arbitrary and capricious standard.  However, the plaintiff must provide "'significant evidence' that the conflict actually affected or motivated the decision at issue.  Cooper v. Life Ins. Co. of North Am., 486 F.3d 157, 165 (6th Cir. 2007) (citing Peruzzi v. Summa Med. Plan, 137 F.3d 431, 433 (6th Cir. 1998)).

Here, Lubeski failed to provide any evidence that MetLife actually influenced Dr. Varpetian's analysis of her claim.  MetLife referred Lubeski's file to two board-certified

---

[1] Questionably, Plaintiff disputes the fact that MetLife was the Plan Administrator or Plan fiduciary while conceding it in their Motion for Summary Judgment.  (Doc. 20 at 11) ("Here, as the plan administrator, MetLife . . .").

7

independent physicians (Dr. Varpetian and Dr. Phillips). The fact that these physicians conducted a "paper review" without physically examining Lubeski is of no import. No authority exists prohibiting such common practice, and "doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation." Davis v. Unum Life Ins. Co. of Am., 444 F.3d 569, 577 (7th Cir. 2006). A mere contractual history of payments is insufficient to support a finding that MetLife's determination was arbitrary and capricious.

Consequently, MetLife's decision to deny Lubeski long-term benefits will stand if the decision is supported by rational evidence in the record. The "plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant." Evans v. UnumProvident Corp., 434 F.3d 866, 877 (6th Cir. 2006). However, it is "not obligated to blindly accept the treating physicians' opinions either." Cooper, 486 F.3d at 167.

The Plan required Lubeski to demonstrate that she was unfit for "any gainful occupation." Although MetLife determined Lubeski had limited restrictions based on her medical conditions, it found she could perform sedentary work. See (A.R. 185-192). The decision was based on the analysis provided by Dr. Varpetian incorporating all of Lubeski's medical history and opinions of her treating physicians. This did provide support for her physical functional limitations beyond February 19, 2010. The report cited Dr. Beall's February 9, 2010 opinion that Lubeski could perform sedentary work and the contrasting opinion in March, 2010. (A.R. 187). Dr. Varpetian found no support for multiple sclerosis and questioned Dr. Beall's diagnosis of Clinically Isolated

8

Syndrome. Dr. Connaghan, one of Lubeski's treating physicians, agreed with Dr. Varpetian's findings of functional limitations. None of the treating physicians objected to Dr. Varpetian's conclusion that Lubeski could perform sedentary work. Therefore, MetLife determined that Lubeski's symptoms "would not prevent her from performing the alternate occupations identified." (A.R. 191).

In sum, the evidence in the record supports MetLife's decision to deny benefits. There is rational support that Lubeski could perform sedentary work. The expert opinion of Dr. Varpetian and the concurring opinion of Lubeski's treating physician Dr. Connaghan suffice. Dr. Varpetian was entitled to examine the symptoms and provide his independent analysis. Although Dr. Beall questioned Lubeski's ability to perform sedentary work in March of 2010, there is no subsequent evidence precluding Dr. Varpetian to make a contradictory finding. Because MetLife's decision is supported by rational evidence in the record, it is not to be disturbed under the deferential arbitrary and capricious standard. However, the Court denies Defendants' request for attorneys' fees as there is no evidence of bad faith or dilatory motive on part of the Plaintiff.

## III.   CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

```
                          s/Marianne O. Battani
                          MARIANNE O. BATTANI
                          UNITED STATES DISTRICT JUDGE
```

DATE: November 5, 2012

2:11-cv-15404-MOB-RSW   Doc # 30   Filed 11/05/12   Pg 10 of 10   Pg ID 1151

## CERTIFICATE OF SERVICE

    I hereby certify that on the above date a copy of this Order was served upon all parties of record via the Court's ECF Filing System.

                                          s/Bernadette M. Thebolt
                                          Case Manager